IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

M.H. EBY, INC.,

          Plaintiff,

    v.

TIMPTE INDUSTRIES, INC.,

          Defendant.

Case No. 5:19-cv-00386-EGS

**DEFENDANT TIMPTE INDUSTRIES, INC.'S
BRIEF IN OPPOSITION TO PLAINTIFF M.H. EBY, INC.'S
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

Prepared and submitted by:

Charles S. Marion, #56509
Caroline S. Choi, #320554
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103
Phone (215) 569-5500
cmarion@blankrome.com
cchoi@blankrome.com

Andre R. Barry, NE #22505
Megan S. Wright, NE #21782
CLINE WILLIAMS WRIGHT
JOHNSON & OLDFATHER, L.L.P.
233 S. 13th St.
Lincoln, NE  68508
Telephone: (402) 474-6900
abarry@clinewilliams.com
mwright@clinewilliams.com

*Counsel for Defendant*

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL ALLEGATIONS .................................................................... 2

   A.  The Product at Issue:  Hopper-Bottom Grain Trailers. ............................ 2

   B.  Timpte's Trade Secrets and Confidential Information. ............................ 2

   C.  M.H. Eby's Access to Timpte's Trade Secrets and Confidential

   Information. ..................................................................................... 2

   D.  Timpte's Termination of M.H. Eby's Dealership in Indiana. ..................... 3

   E.  M.H. Eby's Secret Plan to Compete with Timpte. ................................... 3

   F.  M.H. Eby's Concealment of its Plan to Compete with Timpte. .................. 4

   G.  The 2018 Dealer Agreement. .................................................................. 4

   H.  M.H. Eby's Failure to Use Best Efforts and Sell Trailers at Retail. ........... 4

   I.   M.H. Eby's Fraudulent Purchase of Timpte Parts. .................................. 5

   J.   M.H. Eby's Continued Breaches of Contract. ......................................... 6

III. STANDARD OF REVIEW ....................................................................... 6

IV.  ARGUMENT .......................................................................................... 8

   A.  Timpte has sufficiently stated a claim for breach of contract. .................. 8

     1.  Timpte alleges facts sufficient to support a claim for breach of contract.

      ..................................................................................................... 8

      a.  M.H. Eby's breach of the retail-sale provision. ................................. 8

b.  M.H. Eby's breach of its best-efforts obligation. .................................. 9

c.  Timpte's allegations regarding damages. ......................................... 10

2.  The 2018 Dealer Agreement does not preclude Timpte's claim for damages. ................................................................................... 11

a.  The plain meaning of Paragraph 14 of the contract does not support M.H. Eby's argument. ........................................................... 12

b.  If construed as an exculpatory clause, the provision M.H. Eby seeks to invoke is not enforceable. .................................................... 12

c.  As construed by M.H. Eby, the clause it seeks to invoke cannot be enforced as a limitation on liability. ...................................... 13

B.  Timpte has sufficiently stated a claim for fraudulent misrepresentation and concealment. ........................................................................ 14

C.  Timpte has sufficiently stated a claim for misappropriation of trade secrets. .......................................................................................... 18

1.  Timpte's misappropriation of trade secrets claim meets the federal pleading standard. ................................................................... 18

2.  The Court should not make factual determinations related to Timpte's trade secret designations at this time. ..................................... 21

D.  Preemption under the PUTSA is procedurally improper at the pleading stage. ................................................................................. 23

E.   The "gist of the action" doctrine does not operate to bar any of Timpte's tort counterclaims.......................................................................................... 25

   1.   Timpte's fraud claims are not barred by the gist of the action doctrine... .............................................................................................................. 26

   2.   Timpte's remaining claims are likewise premised on societal duties and not obligations of contract....................................................................... 27

F.   None of Timpte's Counterclaims is barred by the applicable statute of limitations. ............................................................................................... 27

V.   CONCLUSION ........................................................................................ 29

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aetna Inc. v. Mednax, Inc.*,
  2018 WL 5264310 (E.D. Pa. Oct. 23, 2018) ............................................. 28

*Alpha Pro Tech, Inc. v. VWR Int'l LLC*,
  984 F. Supp. 2d 425 (E.D. Pa. 2013) ........................................................ 23

*Arconic Inc. v. Novelis Inc.*,
  2018 WL 4944373 (W.D. Pa. Mar. 14, 2018)............................................ 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 6

*Boardakan Rest. LLC v. Gordon Grp. Holdings, LLC*,
  2015 WL 4597970 (E.D. Pa. July 31, 2015).............................................. 15

*Bohler-Uddehold Am., Inc. v. Ellwood Group, Inc.*,
  247 F.3d 79 (3d Cir. 2001) ........................................................................ 27

*Cenveo Corp. v. Slater*,
  2007 WL 527720 (E.D. Pa. Feb. 12, 2007)................................................ 23

*Connelly v. Lane Constr. Corp.*,
  809 F.3d 780 (3d Cir. 2016) ........................................................................ 7

*Corsale v. Sprean Energy Corp.*,
  374 F.Supp.3d 445 (W.D. Pa. 2019) ........................................................... 8

*EXL Labs., LLC v. Egolf*,
  2011 WL 880453 (E.D. Pa. Mar. 11, 2011) ......................................... 22, 23

*Fishkin v. Susquehanna Partners, G.P.*,
  2007 WL 560703 (E.D. Pa. Feb. 12, 2007)................................................ 10

*In re Budeprion XL Mktg. & Sales Litig.*,
  2010 WL 2135625 (E.D. Pa. May 26, 2010) ................................................ 7

*Koresko v. Bleiweis*,
  2004 WL 3048760 (E.D. Pa. Dec. 30, 2004)............................................. 27

*Longview Dev. LP v. Great Atl. & Pac. Tea Co.*,
2004 WL 1622032 (E.D. Pa. July 20, 2004) ........................................... 26, 27

*Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*,
2019 WL 1003623 (M.D. Pa. Feb. 28, 2019) ......................................... 18, 19

*Maier v. Bucks Cty.*,
2019 WL 689206 (E.D. Pa. Feb. 19, 2019) ................................................. 28

*Marsulex Envtl. Techs. v. Selip S.P.A.*,
247 F. Supp. 3d 504 (M.D. Pa. 2017) ......................................................... 13

*Mattern & Assocs., LLC v. Latham & Watkins LLP*,
2014 WL 4804068 (E.D. Pa. Sept. 26, 2014) .............................................. 19

*Mendelsohn, Drucker & Assoc. v. Titan Atlas Manufacturing*,
885 F. Supp. 2d 767 (E.D. Pa. 2012) ..................................................... 18, 25

*Nat'l Data Payment Sys., Inc. v. Meridian Bank*,
212 F.3d 849 (3d Cir. 2000) ..................................................................... 9, 10

*PDC Machines Inc. v. Nel Hydrogen A/S*,
2018 WL 3008531 (E.D. Pa. June 15, 2018) .......................................... 19, 20

*Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*,
602 F.3d 541 (3d Cir. 2010) ........................................................................ 25

*Perfect Plastics Indus., Inc. v. Cars & Concepts, Inc.*,
758 F. Supp. 1080 (W.D. Pa. 1991) ............................................................ 28

*Perkins v. Venezia Enterprises*,
2018 WL 6695332 (Pa. Super. Ct. Dec. 20, 2018) ...................................... 27

*Phillips v. Cty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .......................................................................... 2

*Robinson v. Family Dollar Inc.*,
679 F. App'x 126 (3d Cir. 2017) ................................................................... 6

*Roger Dubois N. Am., Inc. v. Thomas*,
2006 WL 2645149 (M.D.Pa. Sept.14, 2006) ............................................... 23

*Schmidt v. Ford Motor Co.*,
972 F.Supp.2d 712 (E.D. Pa. 2013) .............................................................. 7

*Shepherd v. Pittsburgh Glass Works, LLC*,
2011 PA Super 156, 25 A.3d 1233 (2011) ................................................... 22

*SI Handling Sys., Inc. v. Heisley,*
  753 F.2d 1244 (3d Cir. 1985) ..................................................................... 22

*Spang & Co. v. U.S. Steel Corp.,*
  545 A.2d 861 (Pa.1988) ................................................................ 10, 11, 12

*Syngy, Inc. v. ZS Assocs., Inc.,*
  2015 WL 899408 (E.D. Pa. Mar. 3, 2015) ................................................... 19

*Synthes (U.S.A.) v. Globus Med., Inc.,*
  2005 WL 2233441 (E.D. Pa. Sept.14, 2005) ................................................ 25

*Valhal Corp. v. Sullivan Associates, Inc.,*
  44 F.3d 195 (3d Cir. 1995) .................................................................. 12, 13

*Weber Display & Packaging v. Providence Washington Ins. Co.,*
  2003 WL 329141 (E.D. Pa. Feb. 10, 2003) .................................................. 26

*Whitaker v. Herr Foods, Inc.,*
  198 F. Supp. 3d 476 (E.D. Pa. 2016) ..................................................... 7, 14

*Yeiser Research & Dev. LLC v. Teknor Apex Co.,*
  281 F. Supp. 3d 1021 (S.D. Cal. 2017) ...................................................... 20

*Youndt v. First Nat. Bank of Port Allegany,*
  868 A.2d 539 (Pa. Super. Ct. 2005) ............................................... 14, 15, 17

*Youtie v. Macy's Retail Holding, Inc.,*
  653 F. Supp. 2d 612 (E.D. Pa. 2009) .................................................. 23, 24

**Rules**

Fed. R. Civ. P. 8 ................................................................................... 7

Fed. R. Civ. P. 8(a)(2) ............................................................................ 7

Fed. R. Civ. P. 9(b) ............................................................................... 7

Fed. R. Civ. P. 15(c)(1)(B) ...................................................................... 28

**Other Authorities**

Restatement (Second) Torts § 551 (1977) ............................................. 14, 17

Defendant Timpte Industries, Inc. ("Timpte") submits this Brief in Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaims filed by Plaintiff M.H. Eby, Inc. ("M.H. Eby").

## I.    INTRODUCTION

M.H. Eby seeks a declaratory judgment that it was blameless in ending its 40-year relationship with Timpte and embarking on a secret plan to compete with Timpte by making and selling its own hopper-bottom trailers.  Specifically, M.H. Eby seeks declarations that it properly the terminated parties' 2018 Dealer Agreement, is not required to return parts or customer lists to Timpte, and did not violate Timpte's intellectual property rights.  [Doc. No 1.]  The detailed factual allegations of Timpte's Amended Answer and Counterclaims tell a different story:  (1) that M.H. Eby committed fraud in the inducement of the 2018 Dealer Agreement and in ordering parts from Timpte later on in 2018; (2) that M.H. Eby breached the 2018 Dealer Agreement by purchasing Timpte trailers other than for retail sale and by failing to use best efforts; (3) that M.H. Eby misappropriated Timpte's trade secrets, including its confidential and proprietary designs, production systems, product history, confidential customer information, and customer pricing; and (4) that M.H. Eby engaged in unfair competition by misusing Timpte's confidential information.

M.H. Eby wants to have it both ways—to seek a judicial declaration that it complied with the law while ignoring Timpte's specific claims as to how M.H. Eby's actions were unlawful.  [Doc. No. 42.]  As explained below, M.H. Eby cannot achieve this.   Timpte's Counterclaims meet the applicable pleading standards, and the various other doctrines and arguments M.H. Eby attempts to invoke cannot be used to bar the Counterclaims.  The Motion to Dismiss should therefore be denied.

## II.     FACTUAL ALLEGATIONS

The following factual allegations in Timpte's Counterclaims "must be accepted as true and viewed in the light most favorable to the [non-moving party], with all factual inferences taken in the [non-moving party's] favor." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

### A.     The Product at Issue:  Hopper-Bottom Grain Trailers.

Timpte manufactures and sells state-of-the-art aluminum bulk-commodity trailers known as "hopper-bottom trailers," as well as aftermarket, repair-and-replacement parts for hopper-bottom trailers. Timpte spent several decades and expended significant expense and effort to design and develop its hopper-bottom grain trailer, making its design, production systems, and product history extremely valuable to Timpte.  [Doc. No. 38 ¶¶ 5–6.]

### B.     Timpte's Trade Secrets and Confidential Information.

Timpte's designs, product system, and product history are not known to Timpte's competitors, and Timpte has taken reasonable measures to preserve the confidentiality of its designs, production systems, and product history, and would never disclose them outside of a confidential relationship.  [*Id*. ¶¶ 7–8.]

### C.     M.H. Eby's Access to Timpte's Trade Secrets and Confidential Information.

Timpte offered its hopper-bottom trailers to the public through M.H. Eby as a dealer from 1978 through December 31, 2018. Over four decades and with three generations of the Eby family, Timpte and M.H. Eby developed a mutually beneficial relationship of trust and confidence. Because of the relationship of trust and confidence between Timpte and M.H. Eby, Timpte permitted M.H. Eby representatives to visit Timpte's manufacturing facilities and otherwise discussed

certain aspects of Timpte's designs, production history, and production systems for the limited and specific purpose of providing M.H. Eby representatives with sufficient product knowledge to represent, sell, and service Timpte's products.  M.H. Eby understood that Timpte's designs, production history, and production systems were confidential, constituted Timpte trade secrets, were to be kept secret, and were not to be shared with any of Timpte's competitors. [*Id.* ¶¶ 11, 13-15.]

### D.      Timpte's Termination of M.H. Eby's Dealership in Indiana.

M.H. Eby and Timpte typically entered into one-year dealer agreements, and M.H. Eby's Timpte sales territory always included Ohio and Pennsylvania. For several years prior to January 1, 2018, Timpte and M.H. Eby agreed that M.H. Eby would also act as a dealer for Timpte products in Indiana. In or about December 2017, Timpte notified M.H. Eby that it would not renew M.H. Eby's dealership rights in Indiana based on M.H. Eby's weak sales there. [*Id.* ¶¶ 11, 16.]

### E.      M.H. Eby's Secret Plan to Compete with Timpte.

M.H. Eby reacted to Timpte's decision to terminate its Indiana dealership by embarking on a plan to compete directly with Timpte in the market for hopper-bottom grain trailers. Pursuant to this plan, M.H. Eby renewed its dealership arrangement with Timpte for Ohio and Pennsylvania for one additional year (2018) and used that year to (a) design and manufacture its own hopper-bottom grain trailer to compete with Timpte; (b) maintain and enhance its relationships with Timpte customers; and (c) take advantage of Timpte's goodwill, production systems, customer lists, favorable dealer pricing, and confidential pricing information, all of which provided a benefit to M.H. Eby in its plan to compete against Timpte. [*Id.* ¶ 17.]

**F.    M.H. Eby's Concealment of its Plan to Compete with Timpte.**

M.H. Eby concealed its plan to compete, because it knew or at least suspected that if M.H. Eby disclosed its true intent Timpte would not renew M.H. Eby's dealership agreement for Ohio and Pennsylvania, which would have resulted in a loss of revenue to M.H. Eby and would have also either ended or limited its access to Timpte's confidential information, including its production systems, customer lists, and favorable dealer pricing.  [*Id.* ¶ 18.]

**G.    The 2018 Dealer Agreement.**

On February 5, 2018, M.H. Eby and Timpte entered into a letter agreement (the "2018 Dealer Agreement") renewing M.H. Eby's dealership agreement for Ohio and Pennsylvania only.  The 2018 Dealer Agreement covered the period from January 1, 2018 through December 31, 2018.  Under the 2018 Dealer Agreement, M.H. Eby had the right to purchase Timpte products for retail resale at M.H. Eby's Pennsylvania and Ohio locations, and M.H. Eby expressly agreed to exert its best efforts to develop and exploit fully the sales potential for the products.  [*Id.* ¶ 19-20.]

The 2018 Dealer Agreement provides that Timpte will sell to M.H. Eby "such Timpte trailers (hereinafter called 'Products')" as Eby may order.  The 2018 Dealer Agreement also provides that "Timpte will sell the Products to [Eby] for RETAIL resale by [Eby]" at or through its Blue Ball, Pennsylvania and West Jefferson, Ohio locations.  [Doc. No. 1-1.]

**H.    M.H. Eby's Failure to Use Best Efforts and Sell Trailers at Retail.**

Rather than use best efforts to fully exploit the sale potential for Timpte's products during 2018, M.H. Eby's leadership team and other employees devoted

substantial time and energy to *competing* with Timpte, by developing M.H. Eby's own hopper-bottom grain trailer, by developing and acquiring after-market parts to repair and service Timpte's hopper-bottom grain trailers after termination of the 2018 Dealer Agreement, and by preparing to sell competing hopper-bottom grain trailers and after-market parts.  [Doc. No.  38 ¶ 21.]

On April 21, 2018 and June 22, 2018, M.H. Eby purchased three trailers from Timpte and used those trailers solely to aid in the development of M.H. Eby's own competing hopper-bottom grain trailers.  If Timpte had known that M.H. Eby was buying Timpte trailers in order to aid in the development and manufacture of a competing hopper-bottom grain trailer, and not for retail resale, it would not have sold the trailers to M.H. Eby. In addition to the trailers, M.H. Eby used other products it acquired as a Timpte dealer, as well as its knowledge of Timpte's designs and production systems, to aid in the development of its own competing hopper-bottom grain trailer.  [*Id.* ¶¶ 22-26.]

### I.        M.H. Eby's Fraudulent Purchase of Timpte Parts.

On or about October 26, 2018, M.H. Eby identified a list of Timpte parts to purchase and a list of Timpte parts to reverse engineer.  On October 29, 2018, M.H. Eby placed a parts order with Timpte for $52,166.36 worth of Timpte hopper-bottom trailer parts (the "October 2018 Parts Order").  It was the largest parts order Timpte had ever received and included multiple quantities of many of Timpte's most valuable and unique hopper-bottom trailer parts, including proprietary extruded aluminum parts.  [*Id.* ¶¶ 27–29.]

When Timpte inquired as to the reason for the size and scale of the October 2018 Parts Order, M.H. Eby represented to Timpte that it was adopting a "new

strategy" with the goal of becoming more responsive to customers and that it was seeking to reduce freight costs of multiple orders.  In fact, M.H. Eby was not adopting a "new strategy" with the goal of becoming more responsive to customers and reducing freight costs. Instead, M.H. Eby was stockpiling Timpte parts using the favorable dealer pricing available so that it could offer more competitive pricing on parts sold at retail after termination of the 2018 Dealer Agreement.  In reliance on M.H. Eby's representations and the parties' longstanding relationship of trust and confidence, Timpte accepted M.H. Eby's representations regarding the October 2018 Parts Order and filled the order on November 8, 2018.  [*Id.* ¶¶ 29–31.]

### J.      M.H. Eby's Continued Breaches of Contract.

On December 5, 2018, Travis Eby announced to all M.H. Eby personnel that M.H. Eby would cease selling Timpte trailers as of January 1, 2019 and would begin selling its own hopper-bottom trailers. M.H. Eby then either began or continued to assemble prototypes of its new, competing grain trailer in December 2018, when it was still under contract to use its best efforts to sell products purchased from Timpte.  [*Id.* ¶¶ 35–37.]

### III.    STANDARD OF REVIEW

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  This standard does not require detailed factual allegations, but it demands more than "an unadorned accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The Third Circuit has articulated a three-step process for district courts to follow in reviewing a complaint in light of the foregoing standard.  *Robinson v. Family*

*Dollar Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016).  First, the court must specifically take note of the elements of each claim at issue. *Connelly*, 809 F.3d at 787 (citing *Iqbal,* 556 U.S. at 678).  Next, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.*  Third and finally, "the court should assume the veracity" of "all well-pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement for relief."  *Id.* at 787 (citing *Iqbal,* 556 U.S. at 679).

The *Twombly* and *Iqbal* standard outlined above applies to all claims pleaded in accordance with the liberal, notice-pleading standard under Fed. R. Civ. P. 8, which requires only, on the substance, a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  However, claims alleging fraud require something more.  Fed. R. Civ. P. 9(b) (requiring that the circumstances of fraud be stated "with particularity").

To meet the heightened Rule 9 standard, this Court has noted that claims involving fraud must "inject precision or some measure of substantiation into a fraud allegation."  *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 484–85 (E.D. Pa. 2016).  Stated differently, an allegation of fraud must provide "notice of the precise misconduct . . . charged [in order to] prevent false or unsubstantiated charges." *Id.* (quoting *Schmidt v. Ford Motor Co.*, 972 F.Supp.2d 712, 720 (E.D. Pa. 2013)).  However, even in the face of these heightened requirements, the pleader need only articulate the misconduct alleged, to whom it was directed, how it was accomplished, and the reasons behind it. *In re Budeprion XL Mktg. & Sales Litig.*, 2010 WL 2135625, at *16 (E.D. Pa. May 26, 2010).  "Rule 9 requires no more." *Id.*

## IV.    ARGUMENT

### A.    Timpte has sufficiently stated a claim for breach of contract.

"[A] plaintiff sufficiently pleads a breach of contract claim by alleging facts that show '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'"  *Corsale v. Sprean Energy Corp.*, 374 F.Supp.3d 445, 455 (W.D. Pa. 2019) (citations omitted).   As discussed below, Timpte has alleged sufficient facts to permit a reasonable inference that M.H. Eby is liable for breach of contract.  M.H. Eby's motion to dismiss Timpte's breach of contract claim should be denied.

### 1.    Timpte alleges facts sufficient to support a claim for breach of contract.

In seeking dismissal, M.H. Eby misrepresents Timpte's breach of contract claim and disregards allegations that Timpte incorporates into its breach of contract count.  Timpte alleges breach of two specific contractual obligations by M.H. Eby: the retail-sale provision and the best-efforts clause.

### a.    M.H. Eby's breach of the retail-sale provision.

First, Timpte agreed under the contract to "sell the Products to [M.H. Eby] *for RETAIL resale* by [M.H. Eby]" at or through M.H. Eby's place of business in Blue Ball, Pennsylvania or West Jefferson, Ohio.  [Doc. No. 1-1 ¶ 1 (emphasis added).] Thus, contrary to M.H. Eby's argument, the 2018 Dealer Agreement does include a specific provision regarding the purpose for which M.H. Eby could purchase trailers under the 2018 Dealer Agreement.

Timpte alleges in its Counterclaims that M.H. Eby breached this obligation. As alleged in the Counterclaims, M.H. Eby purchased three trailers from Timpte on

specified dates under the 2018 Dealer Agreement but made no effort to sell the three trailers at retail. [Doc. No. 38 ¶ 23.] Instead, M.H. Eby used the three trailers to aid in the development of M.H. Eby's own hopper-bottom trailer to compete with Timpte. [*Id.* ¶ 23.]  Timpte would not have sold the trailers to M.H. Eby if Timpte had known that M.H. Eby was buying Timpte trailers to aid in the development and manufacture of a competing hopper-bottom trailer and not for retail resale. [*Id.* ¶ 25.]

### b.    M.H. Eby's breach of its best-efforts obligation.

The 2018 Dealer Agreement also contains a second provision applicable here—an agreement by M.H. Eby "to exert [M.H. Eby's] best efforts to develop and exploit fully the sales potential for the Products." [Doc. No. 1-1 ¶ 2.]  The Counterclaims sets forth multiple factual allegations regarding M.H. Eby's breach of this provision.  Specifically, during the term of the 2018 Dealer Agreement, rather than using their best efforts to fully exploit the sales potential for Timpte's products, M.H. Eby's leaders and other employees devoted their time and energy to (1) compete with Timpte by developing M.H. Eby's own, competing hopper-bottom grain trailer, (2) develop and acquire after-market parts to repair and service Timpte trailers after termination of the 2018 Dealer Agreement, and (3) prepare to sell competing hopper-bottom grain trailers. [Doc. No. 38 ¶¶ 17, 21.]  The Counterclaims allege that M.H. Eby personnel met and conferred regularly to carry out these objectives. [*Id.* ¶ 22.]

"Best efforts" clauses are construed as requiring more than good faith.  They require the pursuit of "all reasonable efforts*." See Nat'l Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849 (3d Cir. 2000) (citing 2 E. Allan Farnsworth, Farnsworth on Contracts, 383–84 (2d ed.1998)) ("The duty of best efforts 'has

diligence as its essence' and is 'more exacting' than the usual contractual duty of good faith."). The facts Timpte alleges in the Counterclaims, and restates here, provide a sufficient basis for the Court to determine that it is plausible M.H. Eby's conduct failed to meet the exacting best efforts obligation to which it agreed.

Additional facts in the Counterclaims support Timpte's allegations. On December 5, 2018, *before* the expiration of the 2018 Dealer Agreement, Travis Eby announced to all M.H. Eby personnel that M.H. Eby would cease selling Timpte trailers as of January 1, 2019 and would begin selling its own competing trailer. [*Id.* ¶35.] Indeed, M.H. Eby began assembling prototypes of its new, competing hopper-bottom grain trailer during the time M.H. Eby was still under contract to use its best efforts to sell Timpte trailers. [*Id.* ¶ 37.] All of these factual allegations are incorporated into Timpte's breach of contract cause of action and plausibly allege that M.H. Eby conduct did not comport with its contractual performance obligations. [*Id.* ¶ 38.]

### c.   Timpte's allegations regarding damages.

Timpte has pleaded sufficient facts to permit the Court to draw the reasonable inference that M.H. Eby may be liable for the misconduct alleged and provides notice of the basis for damages that result. *See, e.g., Fishkin v. Susquehanna Partners, G.P.,* 2007 WL 560703, at *2 (E.D. Pa. Feb. 12, 2007) (applying Pennsylvania law and stating, "Proof of the exact amount of loss or a precise calculation of damages, however, is not required as long as the evidence 'with a fair degree of probability' establishes a basis for the assessment of damages." (quoting *Spang & Co. v. U.S. Steel Corp.,* 545 A.2d 861, 867 (Pa.1988))), *aff'd in part,* 340 F. App'x 110 (3d Cir. 2009).)

10

Timpte has alleged that M.H. Eby was required to use its best efforts to develop and exploit fully the sales potential for Timpte products and that M.H. Eby instead focused its time and energy to developing its own trailer and competing with Timpte.  [*Id.* ¶¶20-22.]   Timpte has also alleged that rather than purchasing certain Timpte trailers for resale as required under the 2018 Dealer Agreement, M.H. Eby instead used those trailers to aid in the develop of a trailer to compete with Timpte's trailer.  [*Id.* ¶ 20-23.]   These allegations establish a "basis for the assessment of damages" in at least two ways—(1) the financial loss caused by M.H. Eby's failure to use its best efforts to sell Timpte trailers and (2) the financial loss caused by the head start M.H. Eby obtained by using Timpte's trailers for purposes other than retail sale.  Timpte has thus properly pleaded that it suffered damages.  [*Id.* ¶ 42.]

### 2.   The 2018 Dealer Agreement does not preclude Timpte's claim for damages.

Contrary to M.H. Eby's argument, the 2018 Dealer Agreement does not waive either party's right to seek redress for breach of contract.  Paragraph 14, which M.H. Eby selectively quotes in its brief, clearly contemplates the possibility that the parties may institute legal proceedings related to the contract or their relationship:

> Any action arising out of the relationship or any sales or transactions between Timpte and You, including, without limitation, any action for breach of warranty, shall be brought within one year from the date of accrual of the cause of action.  If any suit or other proceedings should be instituted by Timpte arising out of or pertaining in any way to such matters, Timpte shall, in addition to such other relief as the court may award, be entitled to reasonable attorneys' fees.  Neither You nor Timpte shall, under any circumstances, be liable to the other for compensation, reimbursement, or damage on account of present or prospective profits, expenditures, investments, or commitments, whether made in the establishment, development, or maintenance of the business or goodwill of You or Timpte or for any other reason whatsoever.

[Doc. No. 1-1 ¶ 14.]

    **a.**    **The plain meaning of Paragraph 14 of the contract does not support M.H. Eby's argument.**

M.H. Eby bases its argument on the last sentence of this paragraph, which limits liability for certain types of damages.  However, the 2018 Dealer Agreement does not purport to limit liability for *all* types of damages or other forms of relief.  Just the opposite.  Paragraph 14 expressly contemplates claims based on the contract and provides that Timpte shall be entitled to attorneys' fees "in addition to such other relief as the court may award."  [*Id.*]  Consistent with this provision, Timpte's Counterclaims also seek injunctive relief and attorney's fees.

If M.H. Eby were correct about the intended purpose of the clause, it would be unenforceable.  M.H. Eby inconsistently relies on cases that analyze either exculpatory clauses or limitation of liability provisions.  Thus, it is unclear how M.H. Eby construes the clause at issue here.  But neither interpretation of paragraph 14—as an exculpatory clause or a limitation on liability—is enforceable in the way M.H. Eby suggests.

    **b.**    **If construed as an exculpatory clause, the provision M.H. Eby seeks to invoke is not enforceable.**

M.H. Eby appears to argue that Paragraph 14 contains an exculpatory clause.  Such a clause, however, will "not be enforced unless it is clear that the beneficiary of the clause is being relieved of liability only for his/her own acts of negligence." *Valhal Corp. v. Sullivan Associates, Inc.*, 44 F.3d 195, 202 (3d Cir. 1995).  In addition, "[t]he clause must be construed strictly and the contract must state the intention of the parties with the greatest particularity." *Id.*  Ambiguities are construed against the party seeking immunity, and the party seeking immunity has the burden of proving all prerequisites to enforcement. *Id.*

12

The clause M.H. Eby seeks to invoke does not comply with the legal requirement for enforcement of an exculpatory clause. The clause does not clearly relieve the parties only of liability for their own negligence, and the intention of the parties is not stated with "the greatest particularity." *Id.* It is not even clear that the clause is meant to be exculpatory. As noted above, the parties specifically contemplated that Timpte may be entitled to some kind of relief in a suit or other proceedings, including damages in the form of attorney's fees. M.H. Eby's argument, therefore, that the parties intended to "clearly and unequivocally waive[] their right to damages," [Doc. No. 42-2 at 10], is not supported by the text of the 2018 Dealer Agreement. At the very least, the ambiguity created by the preceding sentence is required to be resolved against M.H. Eby, the party seeking immunity.

### c. As construed by M.H. Eby, the clause it seeks to invoke cannot be enforced as a limitation on liability.

M.H. Eby also seeks to cast the provision as one capping or limiting *all* liability, effectively barring all forms of recovery for breach of the agreement. While limitation of liability clauses are not "held to the same stringent standard" of enforceability as exculpatory provisions, a limitation of liability clause cannot create a disincentive to perform the contract with due care. *Marsulex Envtl. Techs. v. Selip S.P.A.*, 247 F. Supp. 3d 504, 512 (M.D. Pa. 2017) (discussing limitation of liability clauses and determining that they must be "reasonable and not so drastic as to remove the incentive to perform with due care"). A limitation of liability provision that "limits" damages to the extent of precluding them entirely would take away all incentive to perform. Construing the provision to completely limit liability does not comport with the law or the common sense position that a contract is only as good as its ability to be enforced.

**B.    Timpte has sufficiently stated a claim for fraudulent misrepresentation and concealment.**

Timpte has sufficiently pleaded its claim for fraudulent misrepresentation and concealment, stating with particularity the circumstances constituting fraud. Timpte identifies the time of M.H. Eby's failures to disclose and misrepresentations, the specific information that was not disclosed or misrepresented, and the individuals involved in the misrepresentation. *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 484–85 (E.D. Pa. 2016) ("To satisfy Rule 9(b)'s pleading requirements, a plaintiff must 'plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'").  Timpte has satisfied the Rule 9 standard.

Contrary to M.H. Eby's argument, the question whether or not M.H. Eby owed a fiduciary duty to Timpte is not relevant to M.H. Eby's duty to disclose facts basic to the transaction.  Under Pennsylvania law, a party has a duty to disclose before completion of a transaction those "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." *Youndt v. First Nat. Bank of Port Allegany*, 868 A.2d 539, 550 (Pa. Super. Ct. 2005) (quoting Restatement (Second) Torts § 551 (1977)).   A fact basic to the transaction is "assumed by the parties as a basis for the transaction itself" and "goes to the basis, or essence of the transaction, and is an important part of the substance of what is bargained for or dealt with."  *Id.* at 551.

14

This Court has previously held that whether a fact is "basic to the transaction" is a question of fact for the jury. *Boardakan Rest. LLC v. Gordon Grp. Holdings, LLC*, 2015 WL 4597970, at *3 (E.D. Pa. July 31, 2015). The facts alleged in the Counterclaims, which must be taken as true for purposes of the Motion to Dismiss, are at least sufficient to raise an issue of fact as to the importance of what M.H. Eby failed to disclose:

- Prior to entering into the 2018 Dealer Agreement, M.H. Eby had already begun making plans to manufacture a hopper-bottom grain trailer in direct competition with Timpte. [Doc. No. 38 ¶¶ 17-18, 44.]

- Timpte did not know this fact prior to entering the 2018 Dealer Agreement, nor did it have the means to discover this fact. [*Id.* ¶¶ 44-45.]

- M.H. Eby concealed from Timpte its intention to develop a competing trailer because M.H. Eby knew or suspected that Timpte would not renew M.H. Eby's Dealer Agreement for Ohio and Pennsylvania and that M.H. Eby wanted the revenue to fund the development of the competing hopper-bottom grain trailer as well as continued access to Timpte's information and pricing. [*Id.* ¶ 18.]

In sum, Timpte has pleaded sufficiently particular facts to plausibly allege that M.H. Eby's intention to develop a competing hopper-bottom grain trailer during a period when M.H. Eby had access to Timpte's confidential information and pricing was a fact basic to the transaction that Timpte would reasonably have expected to be disclosed.

Timpte also alleges facts sufficient to state a claim for fraudulent misrepresentation:

- On or about October 26, 2018, M.H. Eby identified Timpte parts it wanted to purchase and to reverse engineer.  [Doc. No. 38 ¶ 27.]

- Days later, M.H. Eby placed a parts order with Timpte that was the largest Timpte had ever received and which included many of Timpte's most valuable and unique parts.  [*Id.*  ¶¶ 27–28.]

- Timpte's national parts manager, Ray Boyer, specifically asked Scott Yokum of M.H. Eby why M.H. Eby was placing such a large order.  [*Id.* ¶ 29.]   Yokum told Boyer that M.H. Eby was adopting a "new strategy" with the goal of becoming more responsive to their customers and seeking to reduce freight costs of multiple orders.

- M.H. Eby's statement was false.   M.H. Eby was instead stockpiling Timpte parts under favorable dealer pricing in anticipation of the termination of the 2018 Dealer Agreement.  [*Id.* ¶¶ 30, 47.]

- Timpte filled the parts order in reliance on the relationship with M.H. Eby and M.H. Eby's representations, still unaware of Eby's intention to terminate its dealer relationship.  [*Id.* ¶¶ 31–32, 48.]

M.H. Eby argues that Timpte's fraudulent misrepresentation claim with respect to the parts order fails because Timpte did not plead that the representation was false, material, and made with the intent of misleading Timpte into relying on it.   M.H. Eby also contends that the statement was true because M.H. Eby was developing a new strategy.  [Doc. No. 42-2 at 16.]   Both arguments are incorrect.

16

Contrary to what M.H. Eby represents in its brief, Timpte does allege that M.H. Eby's statement was false. [Doc. No. 38 ¶¶ 29–30, 47–48.] Timpte also pleads facts to establish the materiality of the false statement: The parts order was unusual enough that Timpte questioned why M.H. Eby had placed the order before filling it and filled the order in reliance on M.H. Eby's false statement. [*Id.* ¶¶ 29–31, 47–50.] Finally, Timpte has also pleaded facts to establish M.H. Eby's intent that Timpte rely on the false statement. [*Id.* ¶¶ 27–31, 47–50.]

M.H. Eby's assertion that its statement was true because M.H. Eby's "was indeed developing a new strategy" does not help its argument. There is no question that M.H. Eby was developing a new strategy; it is just that M.H. Eby's real strategy was different than the one it falsely represented to Timpte. In asserting that M.H. Eby had a new strategy, M.H. Eby had an obligation to disclose "matters known to [M.H. Eby] that [M.H. Eby] [knew] to be necessary to prevent [the] partial or ambiguous statement of the facts from being misleading." *Youndt*, 868 A.2d at 549 (quoting Restatement (Second) Torts § 551 (1977)). As set forth in the Counterclaims, M.H. Eby failed to meet this basic obligation of honesty and is therefore subject to liability for fraud.

M.H. Eby contends that even if M.H. Eby's statement regarding a "new strategy" was false, Timpte has no claim because "Eby was permitted to purchase parts from Timpte for any reason" and "[n]o legal or contractual duty compelled M.H. Eby to disclose to Timpte its plans to develop its own hopper-bottom grain trailers or the purpose for which Eby purchased parts in October 2018." [Doc. No. 42-2 at 17.] M.H. Eby again overlooks the duty of honesty imposed by society. *Mendelsohn, Drucker & Assoc. v. Titan Atlas Manufacturing*, 885 F. Supp. 2d 767, 790 (E.D. Pa.

17

2012) (recognizing that fraudulent inducement constitutes a breach of duty of honesty imposed by society).  M.H. Eby was not free to engage in dishonesty, either through affirmative misrepresentations of material facts or through failing to fulfill its duty to disclose facts basic to its transactions with Timpte.  Through its dishonest conduct, as alleged in the Complaint, M.H. Eby not only gained access to Timpte's parts, it obtained those parts in large quantities that were key to its plans to compete against Timpte, and at a discounted rate.  [Doc. No. 38 ¶ 17.]  Timpte has adequately alleged its claim of fraud, and M.H. Eby's Motion to Dismiss that claim should be denied.

### C.    Timpte has sufficiently stated a claim for misappropriation of trade secrets.

Contrary to M.H. Eby's argument, Timpte's misappropriation claims meet the federal pleading standard, and assert valid categories of trade secrets.

### 1.    Timpte's misappropriation of trade secrets claim meets the federal pleading standard.

"A robust consensus of district courts within the Third Circuit have held that a party alleging misappropriation in violation of [the Pennsylvania Uniform Trade Secrets Act] need not describe trade secrets with particularity to survive Rule 12 scrutiny." *Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*, 2019 WL 1003623, at *9 (M.D. Pa. Feb. 28, 2019) (collecting cases).  Several courts have noted that particularized description of the trade secrets at issue in a pleading "would result in public disclosure [by way of the court record] of the purported trade secret." *Id.* (quoting *Mattern & Assocs., LLC v. Latham & Watkins LLP*, 2014 WL 4804068, at *3 (E.D. Pa. Sept. 26, 2014).

18

With this in mind, a misappropriation plaintiff need only describe protected information with enough particularity "as to separate the trade secret from matters of general knowledge in the trade of or special knowledge of persons skilled in the trade." *Syngy, Inc. v. ZS Assocs., Inc.*, 2015 WL 899408, at *6 (E.D. Pa. Mar. 3, 2015).[1] Put differently, the claim's description of the trade secrets at issue need only be "sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets *Arconic Inc. v. Novelis Inc.*, 2018 WL 4944373, at *1 (W.D. Pa. Mar. 14, 2018).

This Court's decision in *PDC Machines* illustrates this standard. *PDC Machines Inc. v. Nel Hydrogen A/S*, 2018 WL 3008531, at *3 (E.D. Pa. June 15, 2018). *PDC Machines* involved a misappropriation claim in which plaintiff alleged that defendants had used PDC Machines' trade secret technology to develop a competing gas compressor. *Id.* In resolving a motion to dismiss, the Court noted that PDC Machines' misappropriation claim did not identify specifically which secrets were utilized in order for defendants to manufacture and design the competing product. *Id.* The Court, however, determined that the factual allegations regarding the defendants' actions provided a sufficient basis to plausibly allege misappropriation. Specifically, the Court noted the truncated timeline from design-to-market in which defendants were able to develop the competing product and reasoned that the

---

[1] As noted above, M.H. Eby's opening brief correctly indicates that extensive discovery has been exchanged in this case. [Doc. No. 42-2 at 19.] However, at the time it filed its Answer and Counterclaims, Timpte was not able to view in readable format more than 33,000 of the documents produced. Thus, even were the Court to apply a different pleading standard to Timpte's Counterclaims because discovery had already begun (M.H. Eby offers no authority to support such a heightened standard), Timpte had not been given adequate time to access, view, and incorporate those materials into its claims or defenses.

defendants' alleged access to confidential PDC data, coupled with their ability to so quickly create a competing product, provided a sufficient basis to conclude that defendants exploited PDC's trade secrets to aid in development of their competing compressor.  *Id.*  The court held that the specific trade secret information used to accomplish the foregoing would likely be garnered through discovery, and need not be specifically pleaded.  *Id.*

The facts of this case echo those in *PDC Machines*.  M.H. Eby purports to have developed its hopper-bottom trailer on a similarly truncated, one-year timeline, which stands in marked contrast to the decades such development took Timpte. [Doc. No. 38 ¶¶ 16–17, 35.]  Timpte has alleged that M.H. Eby obtained its trade secret information in the form of "confidential designs, production systems, and product history, confidential customer information, and confidential pricing information," and then used that information to create, and then market, a competing product.  [*Id.* ¶¶ 18, 54, 71.]  Timpte further alleges that it permitted M.H. Eby representatives "to visit Timpte's manufacturing facilities and otherwise discussed certain aspects of Timpte's designs, production history, and production systems for the limited and specific purpose of providing M.H. Eby representatives with sufficient product knowledge to represent, sell, and service Timpte's products," which M.H. Eby then improperly used to design a competing trailer.  [*Id.* ¶ 14.]

It is "the defendant who knows what is misappropriated, [and] a plaintiff should not be required to plead with specificity all of its possible trade secrets to proceed to discovery."  *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1044 (S.D. Cal. 2017).  Timpte has met its allegation to plead that M.H. Eby misappropriated its trade secrets.

M.H. Eby additionally argues that Timpte has failed to plead that the trade secrets alleged were actually secret.  [Doc. No. 42-2 at 19–20.]  Again, M.H. Eby seeks to ignore the express allegations of the Counterclaims.  Timpte specifically alleges that it did not, and would not, share this information with anyone with whom it was not in a confidential relationship.  [Doc. No. 38 ¶ 8.]  Timpte further alleges the *reason* that this information was protected: to make it "prohibitively expensive" for competitors to replicate the designs and to create competing products. [*Id.* ¶ 7.] Timpte further alleges that the trade secrets involved here are not "generally known or readily ascertainable in the business or trade" and that Timpte has taken "reasonable measures to maintain their secrecy." [*Id.* ¶ 53.]  M.H. Eby's Motion to Dismiss Timpte's Third and Fourth Causes of Action should be denied.

### 2. The Court should not make factual determinations related to Timpte's trade secret designations at this time.

As analyzed above, Timpte has sufficiently pleaded its trade secret claims and they should not be dismissed for lack of sufficient detail.  However, M.H. Eby makes an additional argument related to misappropriation: That Timpte's trade secrets designations should be substantively addressed by the Court on this motion. M.H. Eby identifies "know-how," "products in the market," and "customer lists and pricing" and indicates that none should be protected in this case.  [Doc. No. 42-2 at 22–27.]   M.H. Eby seems to be requesting that the Court make a factual determination as to whether the materials and information at issue meet the definition of trade secrets.  The Court should decline to make such a ruling at this early stage.

As to know-how and customer lists and pricing, M.H. Eby is *not* arguing that those types of information can *never* acquire trade secret protection. [Doc. No. 42-2

at 22–24.]  On that front, M.H. Eby is correct.  *See SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1262 (3d Cir. 1985) (analyzing whether and to what extent the "know-how" alleged was protectable); *Shepherd v. Pittsburgh Glass Works, LLC*, 2011 PA Super 156, 25 A.3d 1233, 1245 (2011) ("[t]he question of whether information is a trade secret is determined on a case-by-case basis and can include confidential customer lists").[2]  In effect, M.H. Eby is asking the Court to wade into the substantive analysis of the parties' dispute.  Factual determination as to what does and does not constitute a trade secret, and what does and does not constitute misappropriation, is premature on the applicable standard of review for a Rule 12 motion.  *EXL Labs., LLC v. Egolf*, 2011 WL 880453, at *7 (E.D. Pa. Mar. 11, 2011) (determining that the court should decline the invitation to analyze the substantive arguments regarding the applicability of trade secret protection at pleading stage).

Finally, M.H. Eby argues that Timpte's designs are not protectable because it sells its trailers to the public.  But, as discussed above, and as alleged in its Counterclaims, Timpte is asserting trade secret protection related to its product history and design experience, and the related information regarding how and why certain design and manufacturing decisions were made.  That information is not readily ascertainable through purchase of a Timpte trailer or other market offerings. [Doc. No. 38 ¶ 7.]  It likewise cannot be gleaned from reverse engineering alone.  [Id.] Thus, M.H. Eby's argument is misplaced and does not apply to the claims as asserted by Timpte and described herein.

---

[2] It does not appear that M.H. Eby is arguing that designation of know-how or customer lists and pricing is futile.  However, to the extent that M.H. Eby argues futility, Timpte notes that the cases cited herein analyzing know-how and customer lists hold that there is a legal basis to assert each.  Thus, any argument as to futility should fail.

### D.   Preemption under the PUTSA is procedurally improper at the pleading stage.

M.H. Eby argues that Timpte's unfair competition claim is preempted by the Pennsylvania Uniform Trade Secrets Act ("PUTSA") and must be dismissed. [Doc. No. 42-2 at 27 (citing *Youtie v. Macy's Retail Holding, Inc.*, 653 F. Supp. 2d 612, 620 (E.D. Pa. 2009).] That argument is misplaced, as is M.H. Eby's reliance on *Youtie*.

Preemption is premature on a Rule 12 motion. *Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 447 (E.D. Pa. 2013); *EXL Labs*, 2011 WL 880453, at *7; *Cenveo Corp. v. Slater*, 2007 WL 527720, at *3 (E.D. Pa. Feb. 12, 2007); *Roger Dubois N. Am., Inc. v. Thomas,* 2006 WL 2645149, at *4 (M.D.Pa. Sept.14, 2006).  As noted in the foregoing cases, preempting claims under PUTSA on a motion to dismiss "would require the court to make a determination that [the plaintiff's] conduct constitutes misappropriation and that the misappropriated information at issue was a trade secret." *EXL Labs,* 2011 WL 880453, at *7.   "That would be inappropriate at this stage in the litigation." *Id.*

Moreover, if the Court dismissed tort claims without making a trade secret determination, and later determined that the information was not within the scope of the PUTSA's definition of a trade secret, that premature action would improperly dispatch of potentially meritorious theories of recovery that fall outside the PUTSA's preemption provision. *Cenveo*, 2007 WL 527720, at *3. ("For example, in this case, if the Court were to dismiss plaintiff's conversion claim and later make the finding that, although plaintiff had proved that defendants took its pricing structure and business proposals, such information was not a protected trade secret under the PUTSA, the Court would be in the difficult position of telling the plaintiff that it had no remedy.").

23

Thus, at the pleading stage, common law tort claims should not be dismissed on the basis of preemption.  In the sole case cited by M.H. Eby, *Youtie*, this Court addressed the issue in the summary judgment context.  *Youtie,* 653 F. Supp. 2d at 620.  After thorough factual analysis and a judicial finding that the information at issue was a trade secret, the court then turned to preemption arguments.  That posture provides little guidance here. While the court may have to substantively address preemption arguments in this case, those arguments, on this motion, are premature.

M.H. Eby also asserts that Timpte's unfair competition claim has not been sufficiently pleaded, arguing that the unfair competition claim should fail for the same reasons it argues Timpte's trade secrets claims should be dismissed.  As shown above, Timpte has met the applicable pleading standard for its trade secrets claims.  Thus, M.H. Eby's argument fails for all the reasons previously stated. Timpte notes, however, that its trade secret and unfair competition claims, while similar, are not identical.  The bulk of M.H. Eby's argument related to trade secrets relates to M.H. Eby's various contentions that the information at issue is not protectable as a trade secret.  But an unfair competition plaintiff need not establish trade secret protection.

Put differently, if the Court were to determine that certain information should not be protected as a trade secret, misuse of that same information may still form the basis for an unfair competition claim.  "Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of

24

another's employees, *and unlawful use of confidential information.*" *Synthes (U.S.A.)
v. Globus Med., Inc.*, 2005 WL 2233441, at *8 (E.D. Pa. Sept.14, 2005) (citations
omitted) (emphasis added).  To the extent, if any, the Court may ultimately decide
that Timpte's confidential information is not a trade secret, it still supports Timpte's
claim for unfair competition.

### E.   The "gist of the action" doctrine does not operate to bar any of Timpte's tort counterclaims.

M.H. Eby asserts the general proposition that all of Timpte's tort claims are
barred by the gist of the action doctrine.  [Doc. No. 42-2 at 28.]  The gist of the action
doctrine's sole purpose is to disallow tort theories where the parties' duties to each
other sound only in contract, and do not implicate any larger societal duty.  *Pediatrix
Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 550 (3d Cir. 2010).  But as this
Court has stated, there can be no "categorical application of the gist of the action
doctrine," and the Court must "engag[e] instead in a fact-intensive analysis of the
parties' conduct in relation to the fraud alleged" prior to dismissal.  *Mendelsohn,
Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 790 (E.D. Pa. 2012);
*see also Pediatrix*, 602 F.3d at 550 (reasoning that application of the gist of the
action doctrine "requires the court to focus on the substance of the dispute, or, more
colloquially, to ask the question, 'What's this case really about?' The doctrine deals
less with specific enumerated 'duties' than with the parties' conduct as it relates to
the contract and the tort alleged").  Thus, M.H. Eby's blanket assertion that all of
Timpte's tort claims are barred by operation of this doctrine is incorrect and fails
acknowledge that Timpte's tort claims arise outside the 2018 Dealer Agreement.
Because none of Timpte's tort theories is premised on the parties' contractual
obligations, the gist of the action doctrine does not apply.

### 1. Timpte's fraud claims are not barred by the gist of the action doctrine.

This Court has been hesitant to apply the gist of the action doctrine to fraud claims at the pleading stage without first allowing the parties to complete meaningful discovery. *Weber Display & Packaging v. Providence Washington Ins. Co.*, 2003 WL 329141, at *4 (E.D. Pa. Feb. 10, 2003) (refusing to decide, on a motion to dismiss, whether the fraudulent inducement claim and the breach of contract claim were so interwoven as to bar the fraud claim). Thus, application of this doctrine to Timpte's fraud claim is at best premature.

Even if the Court were to apply the doctrine now, it still would not bar Timpte's fraud claims. The gist of the action doctrine does not bar fraudulent misrepresentation claims where the fraud was solely in the inducement to enter a contractual agreement. *Longview Dev. LP v. Great Atl. & Pac. Tea Co.*, 2004 WL 1622032, at *3 (E.D. Pa. July 20, 2004) ("fraud to induce a person to enter a contract is generally collateral to the terms of the contract itself and implicates society's desire to avoid the fraudulent inducement of contracts"). As discussed above, Timpte's allegations, taken as true for purposes of this motion, clearly describe fraud resulting in an inducement to contract. [Doc. No. 38 ¶¶ 17–19, 44.] Moreover, to the extent Timpte's fraud claims relate to M.H. Eby's fraudulent purchase of parts, they are outside the scope of the 2018 Dealer Agreement. The "Products" covered by the contract are "Timpte trailers" but not parts. [Doc. No. 1-1 at 3.] Thus, the gist of the action doctrine does not apply; rather, larger societal duties related to fairness in contracting govern. *Longview*, 2004 WL 1622032, at *3; *see also Perkins v. Venezia Enterprises*, 2018 WL 6695332, at *7 (Pa. Super. Ct. Dec. 20, 2018).

### 2.   Timpte's remaining claims are likewise premised on societal duties and not obligations of contract.

M.H. Eby cites *Bohler–Uddehold* for the proposition that the gist of the action doctrine bars a claim for misappropriation of trade secrets when a written agreement exists between the parties. [Doc. No. 42-2 at 29 (citing *Bohler-Uddehold Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 106-07 (3d Cir. 2001).] This argument is a mischaracterization of the holding in that case. This Court has subsequently noted that *Bohler–Uddehold* is confined to its facts and the specific contract at issue. *Koresko v. Bleiweis*, 2004 WL 3048760, at *3 (E.D. Pa. Dec. 30, 2004). The holding in *Bohler-Uddehold* turned on the fact that the parties had specifically contracted for the scope of use of the trade secrets, making the claim one for breach of that agreement. Here, there was no such governing document and the duty was one to society. *Id.* Thus, the gist of the action doctrine does not apply to Timpte's trade secret claims. The same is true of Timpte's tort action for unfair competition.

Like Timpte's trade secret claims, its unfair competition claim is founded on M.H. Eby's duties of honesty and fair competition, not specific language in the 2018 Dealer Agreement. It thus falls outside the scope of the parties' contract and the gist of the action doctrine.

### F.   None of Timpte's Counterclaims is barred by the applicable statute of limitations.

M.H. Eby ends its brief with a weak and seriously flawed attempt to invoke the statute of limitations. M.H. Eby suggests that Timpte's claims may be barred by the one-year limitations period set forth in the 2018 Dealer Agreement, but concedes that it is "unclear" whether the limitations period has run based on the facts alleged in the Counterclaims. [Doc. No. 42-2 at 30.] As this Court has

recognized, however, a claim should only be dismissed on limitations grounds if application of the limitations period is clear from the face of the complaint. *Maier v. Bucks Cty.*, 2019 WL 689206, at *6 (E.D. Pa. Feb. 19, 2019).  M.H. Eby's statute-of-limitations argument should be rejected on this ground alone.

In addition, in trying to describe how the statute of limitations is to be applied, M.H. Eby simply gets the law wrong.  M.H. Eby assumes that the timeliness of Timpte's claims is to be measured by the length of time between the date of accrual and the date Timpte filed its Counterclaims. [Filing No. 42-2 at 30.]  However, under Fed. R. Civ. P. 15(c)(1)(B), Timpte's Counterclaims relate back to the date of Timpte's original Answer on February 27, 2019.  *Perfect Plastics Indus., Inc. v. Cars & Concepts, Inc.*, 758 F. Supp. 1080 (W.D. Pa. 1991) (finding relation back of the defendant's proposed counterclaim to the original answer where the claim arose from the same transaction alleged in the Answer).  Thus, assuming for the sake of argument that the contractual limitations period could be construed to apply to Timpte's non-contractual Counterclaims, all of Timpte's claims were timely asserted if they accrued on or after February 27, 2018.  M.H. Eby does not argue that any of Timpte's claims accrued before February 27, 2018, and the facts alleged in the Counterclaims affirmatively show they accrued after that date.[3]

---

[3] For example, Timpte alleges that M.H. Eby breached the 2018 Dealer Agreement by purchasing three Timpte trailers for a purpose other than retail resale and that those purchases occurred in April and June 2018—well within the one-year contractual limitation period advocated by M.H. Eby.  [*Id.*]  In addition, Timpte's claims for fraudulent concealment misrepresentation would have accrued at the time Timpte knew or should have known of the fraudulent behavior. *Aetna Inc. v. Mednax, Inc.*, 2018 WL 5264310, at *6 (E.D. Pa. Oct. 23, 2018) ("a fraud claim does not accrue until the fraud has been discovered by the exercise of due diligence").  As alleged in the Counterclaim, Timpte was still unaware of M.H. Eby's fraud as of November 8, 2018, well within one year of Timpte's Answer.  [Doc. No. 38 ¶ 31.]  The date Timpte's trade secret and unfair competition claims accrued cannot be determined without discovery, but it is unlikely that either fully accrued on or before February 27, 2018, because M.H. Eby's development of its trailers continued throughout 2018.  [*Id.* ¶¶ 22, 31.]  Thus, the facts alleged in the Counterclaim, which

## V.     CONCLUSION

Timpte's Counterclaims set forth detailed allegations as to how M.H. Eby breached the 2018 Dealer Agreement, how M.H. Eby committed fraud in the inducement of that contract and its subsequent order of parts from Timpte, and how M.H. Eby misappropriated Timpte's trade secrets and engaged in unfair competition. These allegations easily meet the applicable pleadings standards. Likewise, M.H. Eby's arguments related to preemption, the gist of the action doctrine, and the statute of limitations are without merit.  For the reasons outlined above, the M.H. Eby's Motion to Dismiss should be denied in its entirety.

Dated this 12th day of November, 2019.

*[Signature on Next Page.]*

---

must be taken as true for purposes of the Motion to Dismiss, show that all of Timpte's claims accrued within one year of the date Timpte filed is Answer to the Complaint.

TIMPTE INDUSTRIES, INC.,
Defendant

s/ Andre R. Barry
Andre R. Barry, NE #22505
Megan S. Wright, NE # 21782
*Admitted Pro Hac Vice*
CLINE WILLIAMS WRIGHT JOHNSON &
OLDFATHER, L.L.P
233 S. 13th Street, Suite 1900
Lincoln, NE 68508
Phone (402) 474-6900
abarry@clinewilliams.com
mwright@clinewilliams.com

-and-

Charles S. Marion, #56509
Caroline S. Choi, #320554
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103
Phone (215) 569-5500
cmarion@blankrome.com
cchoi@blankrome.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of November, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

s/ Andre R. Barry
Andre R. Barry

4820-2028-5356, v. 2

31