IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.H. EBY, INC., | : | |
| Plaintiff, | : | CIVIL ACTION NO. 19-386 |
| v. | : | |
| TIMPTE INDUSTRIES, INC. d/b/a TIMPTE, INC., | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                             December 19, 2019

      The plaintiff originally commenced this action seeking a declaratory judgment that it was blameless in (1) ending its 40-year relationship with the defendant in which it served as an authorized dealer of the defendant's trailers and parts and (2) starting to manufacture and sell its own trailers. Specifically, the plaintiff seeks declarations that it properly terminated an agreement between the parties, that it is not required to return anything to the defendant, and that it did not violate the defendant's intellectual property rights. Unsurprisingly, the defendant's newly asserted counterclaims allege a different story. The defendant alleges that plaintiff fraudulently induced it to enter into the agreement, that the plaintiff breached the agreement, that the plaintiff misappropriated trade secrets, and that the plaintiff engaged in unfair competition by misusing the defendant's confidential information.

      In response to these allegations, the plaintiff has now filed this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the defendant's counterclaims. After thoroughly reviewing the allegations in the amended counterclaim and the parties' submissions, the court finds that the defendant has set forth plausible counterclaims against the plaintiff, and the

various arguments that the plaintiff invokes are insufficient to bar the counterclaims. Therefore, the court will deny the motion to dismiss in its entirety. However, the court will provide plaintiff with the ability to reassert its arguments at a later stage in the litigation when these arguments are no longer premature and when the record is more fully developed.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff, M.H. Eby Inc. ("M.H. Eby"), filed a complaint for declaratory judgment against Timpte Industries Inc., d/b/a Timpte Inc. ("Timpte"), on January 25, 2019. *See generally* Compl., Doc. No. 1. In the complaint, M.H. Eby alleges that it acted as an authorized dealer of Timpte trailers and parts pursuant to a dealer agreement, which the parties had renewed annually for more than 40 years. *See* Compl. at ¶ 9. In December 2018, M.H. Eby notified Timpte that it intended to terminate the parties' 2018 dealer agreement (the "Agreement") and not execute a new agreement for 2019. *See id.* at ¶ 16. In response to this notice, Timpte requested that M.H. Eby, *inter alia*, provide Timpte with its customer lists and return parts for which it already paid. *See id.* at ¶ 17. Timpte also accused M.H. Eby of misappropriating its trade secrets by developing its own "hopper bottom" trailer. *See id.* at ¶ 19.

Timpte threatened to file a lawsuit for breach of contract against M.H. Eby and indicated that it would attempt to stop it from showing its "hopper bottom" trailers at an upcoming trade show. *See id.* at ¶ 24. In response to Timpte's actions, M.H. Eby filed the instant action in which it seeks declarations that (1) it properly terminated the Agreement, (2) it is not required to return already-paid-for parts or customer lists to Timpte, and (3) it did not violate Timpte's intellectual property rights. *See id.* at 5–8.

On February 27, 2019, Timpte answered the complaint. *See* Doc. No. 8. The court held an initial pretrial conference with counsel for the parties on April 4, 2019, and entered a scheduling

order the following day. *See* Doc. Nos. 16, 17. The parties filed a joint motion to have the court extended the deadlines in the original scheduling order and, after a telephone conference the prior day, the court granted that motion on August 8, 2019. *See* Doc. Nos. 29, 30, 32, 33.

On September 30, 2019, the final day permitted for amendment under the court's August 8, 2019 amended scheduling order, Timpte filed a motion for leave to amend and a proposed amended answer with counterclaims. *See* Doc. No. 35. The court entered an order on October 7, 2019, denying the motion for leave to file an amended answer and counterclaims as moot and directing the clerk of court to docket Timpte's amended answer and counterclaims per the amended scheduling order. *See* Order, Doc. No. 37.

In the amended answer and counterclaims, Timpte alleges that it (and its predecessors-in-interest) have manufactured bulk-commodity transportation equipment for over 130 years. Countercls. at ¶ 5, Doc. No. 38.[1] Timpte currently "manufactures and sells state-of-the-art aluminum bulk-commodity trailers known as hopper-bottom trailers, as well as repair and replacement parts for hopper-bottom trailers." *See id.* From 1978 through December 2018, Timpte and M.H. Eby entered into agreements, typically one-year dealer agreements, through which M.H. Eby sold Timpte's hopper-bottom trailers, parts, and accessories to the public. *See id.* at ¶ 11. M.H. Eby also performed warranty work on these trailers for Timpte's customers. *See id.* M.H. Eby's sales territory for Timpte products included Ohio and Pennsylvania, although there was also a several-year period where M.H. Eby sold Timpte products in Indiana. *See id.* at ¶ 16.

Timpte alleges that it had to terminate M.H. Eby's dealership rights in Indiana due to weak sales there. *See id.* Due to the termination of this dealership arrangement in Indiana, Timpte asserts that M.H. Eby "embark[ed] on a plan to compete directly with Timpte in the market for hopper-

---

[1] Timpte's counterclaims begin on page 7 of the document.

bottom grain trailers." *Id.* at ¶ 17. As part of this plan, it renewed its dealership agreements with Timpte for Ohio and Pennsylvania and used that year to

> (a) design and manufacture its own hopper-bottom grain trailer to compete with Timpte; (b) maintain and enhance its relationships with Timpte customers; (c) take advantage of Timpte's goodwill, production systems, customer lists, favorable dealer pricing, and confidential pricing information, all of which provided a benefit to M.H. Eby in its plan to compete against Timpte.

*Id.*

In addition, on October 29, 2018, M.H. Eby placed an order for Timpte hopper-bottom trailer parts totaling $52,166.36, which "was the largest parts order Timpte had ever received and included multiple quantities of many of Timpte's most valuable and unique hopper-bottom trailer parts, including proprietary extruded aluminum parts." *Id.* at ¶ 28. When asked about the large parts order, M.H. Eby told Timpte that the request was part of its new strategy to become more responsive to its customers and reduce freight costs of multiple orders. *See id.* at ¶ 29. Timpte asserts that this "new strategy" had nothing to do with reducing freight costs or improving responsiveness to customers; rather, M.H. Eby was stockpiling the parts to offer more competitive pricing on parts sold at retail after it terminated the 2018 dealer agreement. *See id.* at ¶ 30.

Timpte also alleges that M.H. Eby failed to give it timely notice of its intent to terminate the Agreement. *See id.* at ¶¶ 33, 34. In this regard, the Agreement provided that M.H. Eby had to give Timpte 30 days' notice of its intent to terminate the Agreement. *See id.* at ¶ 33. The Agreement was set to expire on December 31, 2018, and M.H. Eby did not notify Timpte of its intent to terminate the Agreement until December 4, 2018. *See id.* at ¶¶ 34, 36.

Based on these allegations, Timpte asserts the following counterclaims against M.H. Eby: (1) breach of contract; (2) fraudulent misrepresentation and concealment; (3) misappropriation of trade secrets; (4) violation of the Defend Trade Secrets Act; and (5) unfair competition. *See*

Amended Answer and Countercls. at 14–19. For its requests for relief, Timpte seeks monetary damages, injunctive relief, and its attorney's fees and costs. *Id.* at 19–20.

On October 28, 2019, M.H. Eby filed a motion to dismiss these counterclaims for failure to state a claim. *See* Doc. No. 42. Timpte filed a response in opposition to the motion to dismiss on November 12, 2019. *See* Doc. No. 46. After receiving an extension, M.H. Eby timely filed a reply brief on November 25, 2019. *See* Doc. Nos. 48, 51. The motion to dismiss is now ripe for resolution.

## II.     DISCUSSION

### A.     Standard of Review Under Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint, or in this case the counterclaims, and construe all reasonable inferences flowing from those facts in the light most favorable to the non-moving party. *See Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). "To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations, but it demands more than "an unadorned accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.     Analysis

#### 1.     Breach of Contract

M.H. Eby moves to dismiss Timpte's breach of contract counterclaim for two reasons: (1) the liability limitation in the Agreement precludes Timpte's claim for damages and (2) even if the liability limitation in the Agreement does not bar Timpte's claim, Timpte has failed to allege facts

5

supporting a plausible claim for relief. *See* Pl.'s Br. in Supp. of Mot. to Dismiss Def.'s Countercls. ("Pl.'s Mem.") at 8–13, Doc. No. 42-2. The court will address these arguments in turn.

First, with regard to the liability limitation in paragraph 14 of the Agreement, this provision provides as follows:

> Any action arising out of the relationship or any sales or transactions between Timpte and You, including, without limitation, any action for breach of warranty, shall be brought within one year from the date of accrual of the cause of action. If any suit or other proceedings should be instituted by Timpte arising out of or pertaining in any way to such matters, Timpte shall, in addition to such other relief as the court may award, be entitled to reasonable attorney's fees. Neither You nor Timpte shall, under any circumstances, be liable to the other for compensation, reimbursement, or damage on account of present or prospective profits, expenditures, investments, or commitments, whether made in the establishment, development, or maintenance of the business or goodwill of You or Timpte or for any other reason whatsoever.

Compl., Ex. A, Agreement at ¶ 14, Doc. No. 1-1.

The language in paragraph 14 does not preclude Timpte's claim for breach of contract because, *inter alia*, the Agreement does not waive either party's rights to seek redress for breach of contract. While paragraph 14 states that "[n]either You nor Timpte shall, under any circumstances, be liable to the other for compensation, reimbursement, or damage on account of present or prospective profits, expenditures, investments, or commitments . . .," *id.*, it also contemplates that the parties may institute legal proceedings related to the contract or the parties' relationship. Specifically, the paragraph notes that: "Any action arising out of the relationship or any sales or transactions between Timpte and You . . . shall be brought within one year. . . . Timpte shall, in addition to such other relief as the court may award, be entitled to reasonable attorneys' fees." *Id.* The plain meaning of paragraph 14 does not support M.H. Eby's argument that the liability limitation precludes Timpte's claim for damages under a cause of action for breach of contract as the text of paragraph 14 makes clear that the Agreement does not purport to limit

6

liability for all types of damages or other forms of relief, such as the injunctive relief that Timpte seeks here.

Furthermore, for an exculpatory clause to be enforceable, "[t]he clause must be construed strictly and the contract must state the intention of the parties with the greatest particularity." *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 202 (3d Cir. 1995). Ambiguities are construed against the party seeking immunity. *See id.* Here, because M.H. Eby is seeking immunity, the ambiguity created by the fact that under the agreement Timpte may be entitled to relief in a suit or other proceeding, including injunctive relief and damages in the form of attorney's fees, should be resolved against M.H. Eby. Even if the court were to construe the provision in paragraph 14 as one capping or limiting all liability, this provision would still not be enforceable. While limitation of liability clauses are not "held to the same stringent standard" of enforceability as exculpatory provisions, a limitation of liability clause cannot create a disincentive to perform the contract with due care. *Marsulex Envtl. Techs. v. Selip S.P.A.*, 247 F. Supp. 3d 504, 512 (M.D. Pa. 2017) (discussing limitation of liability clauses and determining that they must be "reasonable and not so drastic as to remove the incentive to perform with due care"). A limitation of liability provision that limits damages entirely would almost completely take away the incentive to perform, and therefore such a provision would not be enforceable. While M.H. Eby argues that "[t]his provision, negotiated between these two sophisticated parties, is not ambiguous, uncertain, illegal or unenforceable," M.H. Eby, Inc.'s Reply Brief in Supp. of Mot. to Dismiss Def.'s Counterclaims ("Pl.'s Reply Br.") at 5, Doc. No. 51, this court finds that it is at the very least ambiguous and likely is unenforceable.

Second, M.H. Eby argues that Timpte has failed to allege facts supporting a plausible claim for relief because "Timpte's breach of contract claim is premised on its speculation that Eby

7

purchased trailers 'for purposes other than retail resale.' Even if Eby had purchased trailers for such a purpose (which Eby denies), the Dealer Agreement does not contain a provision governing Eby's required 'intent' in purchasing from Timpte." Pl.'s Mem. at 11 (internal citations omitted). However, contrary to this argument, Timpte agreed to "sell the Products to [M.H. Eby] for RETAIL resale by [M.H. Eby]" at or through M.H. Eby's place of business in Blue Ball, Pennsylvania or West Jefferson, Ohio. Agreement at ¶ 1. In the counterclaims, Timpte alleges that M.H. Eby breached this obligation by purchasing three trailers from Timpte on specified dates, but made no effort to resell these trailers. *See* Countercls. at ¶ 23. Timpte maintains that it "would not have sold the trailers to M.H. Eby if [it] had known that M.H. Eby was buying [its] trailers to aid in the development and manufacture of a competing hopper-bottom trailer and not for retail resale." Def. Timpte Indus., Inc.'s Br. in Opp. to Pl. M.H. Eby's Mot. to Dismiss Def.'s Countercls. ("Def.'s Mem.") at 9, Doc. No. 46.

M.H. Eby also maintains that the Agreement does not contain a non-compete provision, and therefore it did not breach any duty imposed by the Agreement and the counterclaim lacks factual allegations showing that any such breach has resulted in damage. *See* Pl's Mem. at 11–13. While it may be true that the Agreement does not contain a non-compete provision, Timpte maintains that M.H. Eby breached its best efforts obligation.

Under the Agreement, M.H. Eby agreed "to exert [its] best efforts to develop and exploit fully the sales potential for the Products." Agreement at ¶ 2. Timpte's counterclaims allege multiple factual allegations regarding M.H. Eby's breach of this provision. According to Timpte,

> M.H. Eby's leaders and other employees devoted their time and energy to (1) compete with Timpte by developing M.H. Eby's own, competing hopper-bottom grain trailer, (2) develop and acquire after-market parts to repair and service Timpte trailers after termination of the 2018 Dealer Agreement, and (3) prepare to sell competing hopper-bottom grain trailers. [Countercls. at ¶¶ 17, 21.] The

8

> Counterclaims allege that M.H. Eby personnel met and conferred regularly to carry out these objectives. [Countercls. at ¶ 22.]

Def.'s Mem. at 9. Assuming these facts are true as required at the motion to dismiss stage, the facts alleged in the counterclaims could provide a plausible basis for finding that M.H. Eby failed to meet it best efforts obligation. The allegations also establish a basis for the assessment of damages via (1) the financial loss caused by M.H. Eby's failure to use its best efforts to sell Timpte trailers and (2) the financial loss caused by the head start M.H. Eby obtained by using Timpte's trailers for purposes other than retail sale. *See id.* at 11. Therefore, the court will allow Timpte's breach of contract claim to proceed.

### 2. Fraudulent Misrepresentation and Concealment

M.H. Eby also argues that Timpte fails to state a claim for fraudulent misrepresentation or concealment. *See* Pl.'s Mem. at 13. There is a heightened pleading standard when it comes to a party asserting a claim of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). M.H. Eby contends that Timpte fails to meet this heightened pleading standard because "Timpte's concealment theory imposes obligations on Eby that are inconsistent with the Dealer Agreement, inconsistent with the arm's length relationship between the parties, and wholly unsupported by any facts averred in the Complaint or Amended Answer with Counterclaims." Pl.'s Mem. at 15.

M.H. Eby maintains that no fiduciary relationship existed and therefore, it "was not barred from competing with Timpte at any time, nor did it have any duty to disclose any reasons or motivations for choosing not to renew the Dealer Agreement, even if [it] had plans to compete with Timpte. The fraudulent concealment claim should be dismissed." *Id.* at 16. However, "where a party is accused of purposefully concealing information material to a transaction, no confidential

9

or fiduciary relationship between the parties need exist for liability to be imposed." *Boardakan Rest. LLC v. Gordon Grp. Holdings, LLC*, Civ. A. No. 11-5676, 2015 WL 4597970, at *11 (E.D. Pa. July 31, 2015). This is because "Pennsylvania has adopted the Restatement (Second) of Torts § 550, which imposes liability for intentional concealment of material information regardless of a duty to disclose." *Id.* Therefore, this court does not find M.H. Eby's argument to be persuasive.

Under Pennsylvania law, a party has a duty to disclose "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." *Youndt v. First Nat'l Bank of Port Allegany*, 868 A.2d 539, 550 (Pa. Super. 2005) (emphasis omitted) (quoting Restatement (Second) of Torts § 551 (1977)). A fact basic to the transaction "goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with." *Id.* at 551 (quoting Restatement (Second) of Torts § 551).

M.H. Eby argues that "Timpte relies upon *Youndt* . . . to support its claims for fraudulent misrepresentation and concealment. Youndt involved a real estate dispute, which presented different principles and legal standards." Pl.'s Reply Br. at 6. The court is unpersuaded by this argument because there is no indication that the Superior Court's recitation of the law in *Youndt* is limited to real estate disputes; additionally, Timpte has alleged facts that could show concealment beyond just a mere failure to disclose.

Timpte alleges that prior to entering into the Agreement, M.H. Eby had already begun making plans to manufacture a hopper-bottom grain trailer in direct competition with Timpte. *See* Def.'s Mem. at 15 (citing Countercls. at ¶¶ 17–18, 44). Timpte also alleges that M.H. Eby concealed its intent to develop a competing trailer because it knew or suspected that Timpte would

10

not renew its dealer agreement for Ohio and Pennsylvania if Timpte was aware of this fact. *See id.* (citing Countercls. at ¶ 18). Timpte further alleges that M.H. Eby wanted continued access to Timpte's information, pricing, and revenue from the Agreement to fund the development of the competing hopper-bottom grain trailer. *See id.* (citing Countercls. at ¶ 18). Timpte has thus pleaded sufficiently particular facts to allege that M.H. Eby's intention to develop a competing hopper-bottom grain trailer during a period when M.H. Eby had access to Timpte's confidential information and pricing was a basic fact to the transaction that Timpte would reasonably have expected M.H. Eby to disclose. Therefore, the fraudulent concealment claim survives the motion to dismiss.

Timpte also alleges facts sufficient to state a claim for fraudulent misrepresentation, such as the allegation that Timpte's national parts manager specifically asked Scott Yokum of M.H. Eby why it was placing such a large order on October 29, 2018. *See* Countercls. at ¶ 28. Mr. Yokum told the manager that M.H. Eby was adopting a "new strategy" with the goal of becoming more responsive to their customers and seeking to reduce freight costs of multiple orders. *See id.* at ¶ 29. Timpte alleges that it filled the parts order in reliance on the long-standing relationship with M.H. Eby and M.H. Eby's representations. *See id.* at ¶¶ 31–32, 48. While M.H. Eby argues that Timpte's fraudulent misrepresentation claim with respect to the parts order fails because "Timpte fails to plead that the representation was in fact false, material, and made with the intent of misleading Timpte into relying on it," Pl.'s Mem. at 16, Timpte alleges that the statement was false. *See* Countercls. at ¶¶ 29–30, 47–48. Timpte also pleads facts to establish the materiality of the false statement such as the fact that the parts order was unusual enough that Timpte questioned why M.H. Eby had placed the order before filling it. *See id.* at ¶¶ 29–31. Timpte has also pleaded

11

facts to establish M.H. Eby's intent that Timpte rely on the false statement. *See id.* at ¶¶ 27–31, 47–50.

M.H. Eby also contends that the statement made by its representative was true because it was indeed developing a new strategy. *See* Pl.'s Mem. at 16. While M.H. Eby was developing a new strategy, Timpte alleges that "M.H. Eby's real strategy was different than the one it falsely represented to Timpte." Def.'s Mem. at 17. In representing that M.H. Eby had a new strategy, M.H. Eby had an obligation to disclose "matters known to [M.H. Eby] that [M.H. Eby] [knew] to be necessary to prevent [the] partial or ambiguous statement of the facts from being misleading." *Youndt*, 868 A.2d at 549 (quoting Restatement (Second) of Torts § 551).

M.H. Eby further claims that even if the statement regarding the new strategy was false, it was permitted to purchase parts from Timpte for any reason so "[n]o legal or contractual duty compelled M.H. Eby to disclose to Timpte its plans to develop its own hopper-bottom grain trailers or the purpose for which Eby purchased parts in October 2018." Pl.'s Mem. at 17. However, taking the facts in the counterclaims as true, M.H. Eby was permitted to purchase parts only for retail resale. Therefore, the court will not dismiss the fraudulent misrepresentation claim.

### 3. Trade Secrets

M.H. Eby next moves to dismiss Timpte's trade secrets counterclaims for several reasons: (1) Timpte has not identified any trade secrets; (2) Timpte's "know-how" is not a trade secret; (3) Timpte cannot claim trade secret protection over any product in the market; and (4) Timpte cannot claim trade secret protection over M.H. Eby's customer list and Timpte's pricing. Pl.'s Mem. at 17–27. The court will address these arguments in turn.

First, M.H. Eby contends that Timpte has failed to identify trade secrets that it had access to and misappropriated. *See id.* at 17. In this regard, M.H. Eby asserts that the "trade secrets"

12

identified in the counterclaims, which consist of "Timpte information and materials," Countercls. at ¶ 53, "confidential designs, production systems, and product history, confidential customer information, and confidential pricing information," *id.* at ¶ 54, and "confidential production know-how," *id.* at ¶ 61, are "vague, ambiguous, and conclusory recitation[s which] certainly do[] not provide enough detail to put [M.H.] Eby on notice of what Timpte alleges [M.H.] Eby has misappropriated." Pl.'s Mem. at 19. This court disagrees.

Timpte's description of the trade secrets at issue need only be "sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." *Arconic Inc. v. Novelis Inc.*, Civ. A. No. 17-1434, 2018 WL 4944373, at *1 (W.D. Pa. Mar. 14, 2018) (citations omitted). "A robust consensus of district courts within the Third Circuit have held that a party alleging misappropriation in violation of [the Pennsylvania Uniform Trade Secrets Act] need not describe trade secrets with particularity to survive Rule 12 scrutiny." *Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*, Civ. A. No. 1:17-CV-1587, 2019 WL 1003623, at *9 (M.D. Pa. Feb. 28, 2019) (collecting cases). Including a particularized description of the trade secrets at issue is problematic in that it would result in the public disclosure of the alleged trade secret by way of court record. *Id.* (quoting *Mattern & Assocs., LLC v. Latham & Watkins LLP*, Civ. A. No. 13-6592, 2014 WL 4804068, at *3 (E.D. Pa. Sept. 26, 2014)). This court finds that Timpte has alleged sufficient facts to establish a plausible claim for misappropriation of its trade secrets.

In concluding that Timpte's allegations are sufficient, the court draws guidance from *PDC Machines Inc. v. Nel Hydrogen A/S*, Civ. A. No. 17-5399, 2018 WL 3008531 (E.D. Pa. June 15, 2018). In *PDC Machines*, the plaintiff alleged that the defendants had used its trade secret technology to develop a competing gas compressor. *See id.* at *3. In resolving a motion to dismiss,

the court noted that the plaintiff did not specifically identify which secrets were used for the defendants to manufacture and design the competing product. *See id.* The court still found that the factual allegations regarding the defendants' actions provided a sufficient basis to plausibly allege misappropriation. *See id.* The court held that the truncated timeline from design-to-market and the defendants' alleged access to confidential PDC data provided a sufficient basis to conclude that defendants exploited PDC's trade secrets. *See id.* at *4. The court also held that the specific trade secret information used to accomplish the foregoing would be gained through discovery and did not need to be plead in more specificity. *See id.*

> Here, Timpte alleges the following facts:
>
> M.H. Eby purports to have developed its hopper-bottom trailer on a similarly truncated, one-year timeline, which stands in marked contrast to the decades such development took Timpte. [Countercls. at ¶¶ 16–17, 35.] Timpte has alleged that M.H. Eby obtained its trade secret information in the form of "confidential designs, production systems, and product history, confidential customer information, and confidential pricing information," and then used that information to create, and then market, a competing product. [*Id.* at ¶¶ 18, 54, 71.] Timpte further alleges that it permitted M.H. Eby representatives "to visit Timpte's manufacturing facilities and otherwise discussed certain aspects of Timpte's designs, production history, and production systems for the limited and specific purpose of providing M.H. Eby representatives with sufficient product knowledge to represent, sell, and service Timpte's products," which M.H. Eby then improperly used to design a competing trailer. [*Id.* at ¶ 14.]

Def.'s Mem. at 20. These factual allegations are sufficient to allow Timpte's trade secret causes of action to survive a motion to dismiss. While M.H. Eby alleges that Timpte failed to allege that any of its information is in fact "secret" or that Timpte took steps to preserve the confidentiality of the information, taking the facts of the counterclaims as true, Timpte specifically alleges that it did not, and would not, share this information with anyone with whom it was not in a confidential relationship. *See* Countercls. at ¶ 8. Timpte further alleges that the trade secrets involved are not "generally known or readily ascertainable in the business or trade" and that Timpte has taken

14

"reasonable measures to maintain their secrecy." *Id.* at ¶ 53. As these allegations are sufficient, the court will not dismiss Timpte's trade secret claims for the purported failure to identify any trade secrets.[2]

M.H. Eby next argues that Timpte's "know-how" is not a trade secret, Timpte cannot claim trade secret protection over any product in the market, and that Timpte cannot claim trade secret protection over M.H. Eby's customer list and Timpte's pricing. *See* Pl.'s Mem. at 22–27. While these arguments may have merit, the court declines to rule on them at such an early stage as to do so would require the court to wade into the substantive merits of the parties' dispute. Because it is not apparent that know-how, customer lists, and pricing information can never be trade secrets, factual determinations about what constitutes a trade secret at this stage of the litigation is premature. *See SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1262 (3d Cir. 1985) (analyzing to what extent "know-how" alleged was protectable); *Shepherd v. Pittsburgh Glass Works, LLC*, 25 A.3d 1233, 1245 (Pa. Super. 2011) ("[t]he question of whether information is a trade secret is determined on a case-by-case basis and can include confidential customer lists" (citation omitted)). Therefore, while the court must deny the motion to dismiss with respect to these claims, the court denies them without prejudice to M.H. Eby raising these arguments again at a later stage.

### 4. **Unfair Competition Preemption**

M.H. Eby also moves to dismiss Timpte's claim for unfair competition. *See* Pl.'s Mem. at 27. It maintains that "[r]egardless of whether the court finds Timpte has sufficiently alleged misappropriation of trade secrets, the court should dismiss the unfair competition claim as preempted by PUTSA." *Id.* at 27–28. However, this court cannot determine whether Timpte's unfair

---

[2] Timpte's claims were specific enough for M.H. Eby to produce over 40,000 documents in response to Timpte's discovery requests. *See* Pl.'s Mem. at 2. Thus, discovery has not been hindered by the purportedly ambiguous nature of the alleged trade secrets.

15

competition claim is premised solely on information that constitutes a trade secret within the meaning of PUTSA at this time. *See Hecht v. Babyage.com, Inc.*, No. 3:10cv724, 2010 WL 3940882, at *4–5 (M.D. Pa. Oct. 6, 2010) (denying motion to dismiss unfair competition claim prior to determination of whether information constituted trade secrets); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, Civ. A. No. 07–1029, 2008 WL 1859811, at *6 (W.D. Pa. Apr. 23, 2008) ("It may well be, in the end, that Plaintiff's unfair competition claim is preempted. But this is not the stage of the litigation to do so.")

Preempting claims under PUTSA at the motion to dismiss stage "would require the court to make a determination that [the plaintiff's] conduct constitutes misappropriation and that the misappropriated information at issue was a trade secret." *EXL Labs., LLC v. Egolf*, Civ. A. No. 10-6282, 2011 WL 880453, at *7 (E.D. Pa. Mar. 11, 2011) "That would be inappropriate at this stage in the litigation." *Id.* Therefore, it would be premature to dismiss Timpte's unfair competition claim at this time, particularly when M.H. Eby argues that the information did not constitute trade secrets and, if this were true, preemption would not apply. The court will therefore deny M.H. Eby's motion to dismiss Timpte's unfair competition claim without prejudice to M.H. Eby raising preemption arguments again at a later stage.

### 5. Gist of the Action Doctrine

M.H. Eby next argues that "[t]he gist of the action doctrine bars Timpte's claims for fraudulent misrepresentation and concealment, misappropriation of trade secrets, and unfair competition." Pl.'s Mem. at 28 (emphasis omitted). The gist of the doctrine action "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002) (citing *Bash v. Bell Tel. Co.*, 601 A.2d 825 (Pa. Super. 1992)). As the Third Circuit has explained:

16

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, 870 F.3d 244, 256 (3d Cir. 2017) (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014) (internal citations omitted)).

M.H. Eby maintains that because the alleged tortious actions in Counts II (fraudulent concealment), III (misappropriation of trade secrets), IV (Defend Trade Secrets Act), and V (unfair competition) arise solely from, and are intertwined with the duties imposed upon it by the Agreement, the gist of the action doctrine bars these claims. Pl.'s Mem. at 29. However, the court points out that there can be no "categorical application of the gist of the action doctrine," as the court must "engag[e] instead in a fact-intensive analysis of the parties' conduct in relation to the fraud alleged" prior to dismissal. *Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 790 (E.D. Pa. 2012); *see also Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 550 (3d Cir. 2010) (reasoning that application of gist of the action doctrine "requires the court to focus on the substance of the dispute, or, more colloquially, to ask the question, 'What's this case really about?' The doctrine deals less with specific enumerated 'duties' than with the parties' conduct as it relates to the contract and the tort alleged"). Therefore, M.H. Eby's assertion that the gist of the action doctrine bars Timpte's tort claims fails as this is an improper application of the doctrine, especially when Timpte claims that its tort claims arise outside of the agreement and are based on larger societal duties. Accordingly, the court must deny the part of the motion to dismiss relating to the gist of the action doctrine without prejudice to M.H. Eby reasserting this argument at a later stage in this proceeding.

### 6. One-Year Contractual Limitations Period

Lastly, M.H. Eby argues that "Timpte's counterclaims are subject to a one-year contractual limitations period." Pl.'s Mem. at 30. This is premised on the fact that paragraph 14 of the Agreement states that "[a]ny action arising out of the relationship or any sales or transactions between Timpte and [Eby], including, without limitation, any action for breach of warranty, shall be brought within one year from the date of accrual of the cause of action." Agreement at ¶ 14. M.H. Eby asserts that "[b]ecause Timpte's Counterclaims lack significant factual details, it is unclear from the face of the claims whether they are timely under this contractual provision. However, to the extent that any of Timpte's claims are premised upon actions that occurred prior to October 8, 2018, they should be dismissed." Pl.'s Mem. at 30. Despite M.H. Eby's assertion to the contrary, the court can dismiss a complaint (or counterclaim) on statute of limitations grounds only if application of the limitations period is clear from the face of the complaint (or counterclaim). *See Maier v. Bucks Cty.*, Civ. A. No. 18-4060, 2019 WL 689206, at *6 (E.D. Pa. Feb. 19, 2019) (dismissing certain claims because court determined it was apparent from face of complaint that limitations barred these claims). Therefore, the court declines to dismiss any claims based on the statute of limitations at this time, but M.H. Eby can also raise this argument at a later stage in this proceeding.

### III. CONCLUSION

For the foregoing reasons, the court will deny the motion to dismiss the counterclaims for the failure to state a claim under Rule 12(b)(6). This dismissal will be without prejudice to M.H. Eby's right to reassert its arguments in a motion for summary judgment once a complete factual record has been developed.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.